IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(GREENBELT DIVISION)

| | | |
|---|---|---|
| In re: | * | Chapter 11 |
| **CREATIVE HAIRDRESSERS INC.,** *et al.*[1] **,** | * | Case Nos. 20-14583, 20-14584-TJC |
| | * | (Jointly Administered) |
| Debtors. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DECLARATION OF PHIL HORVATH IN SUPPORT
OF DEBTORS' MOTIONS FOR ORDER (A) APPROVING AND AUTHORIZING THE
SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS PURSUANT TO THE
AMENDED AND RESTATED ASSET PURCHASE AGREEMENT, FREE AND CLEAR
OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (B)
APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES RELATED THERETO, AND (C)
<u>GRANTING RELATED RELIEF</u>**

I, Phil Horvath, hereby declare under penalty of perjury:

1.   I am the President and Chief Operating Officer of Creative Hairdressers, Inc. ("CHI") and am familiar with Ratner Companies, L.C. ("Ratner Co.") which provides management services to CHI (each a "Debtor" and collectively, the "Debtors"). In these capacities, I am familiar with the Debtors' day-to-day operations, businesses, financial affairs, and books and records.

2.   I submit this declaration in support of the Debtors request for entry of an Order authorizing the Debtors to sell substantially all of their assets pursuant to the terms of the Final APA (as defined below) to HC Salon Holdings, Inc. ("HC Salon") (the "Declaration").

3.   Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from

---

[1] The Debtors in these chapter 11 cases are: (i) Creative Hairdressers, Inc. and (ii) Ratner Companies, L.C.

my review of relevant documents, information supplied to me by other members of the Debtors' management and the Debtors' professional advisors. I am authorized to submit this Declaration on behalf of the Debtors, and, if called upon to testify, I could and would testify competently to the facts set forth herein.

4. On April 23, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. A Copy of the Voluntary Petition for Each Debtors was filed as Dkt. No 1, in each of Debtors respective case. Attached to CHI's Voluntary Petition is a Resolution dated April 22, 2020. Attached To Ratner Co.'s Voluntary Petition is a Written Consent Of the Managing Member dated April 22, 2020.

5. On the Petition Date, I submitted the Declaration of Phil Horvath In Support Of Debtors' First Day Motion [Dkt. No 6]. That Declaration is incorporated by reference herein.

6. Prior to the Petition Date, the Debtors entered into an Asset Purchase Agreement ("APA") with HC Salon pursuant to which HC Salon has agreed to purchase substantially all of the assets of CHI. The purchase price offered by HC Salon is the amount of (i) Assumed Liabilities (as defined in the APA), (ii) a credit bid in an amount up to the value of the Obligations (as defined in the DIP Financing Agreement), and (iii) pay an amount in cash equal to the amount set forth in a Wind Down fund.

7. By Order entered on May 4, 2020 [Dkt. No. 137], the Debtors' proposed order approving the bidding procedures (the "Bidding Procedures Order") was approved. Under the terms of the Bidding Procedures Order, a hearing to consider the proposed sale of the Debtors' assets to HC Salon or a higher and better bidder is set for May 28, 2020.

8. In compliance with the Bidding Procedures Order, Debtors counsel, at my direction, caused the Debtors' Notice of Auction and Sale of Assets (Dkt. No. 153) (the "Sale Notice"), to be served on (a) the Office of the United States Trustee for the District of Maryland (the "U.S. Trustee"); (b) the Official Committee of Unsecured Creditors appointed in these cases and its counsel when they were appointed (the "Committee"); (c) all parties requesting notices in these chapter 11 cases (the "Chapter 11 Cases"); (d) all known creditors of the Debtors; (e) counsel to Salon Holdings; (f) counsel to all prepetition secured parties; and (g) all parties known to the Debtors to have expressed interest in purchasing all or a portion of the Acquired Assets.

9. Prior to selecting the HC Salon as the Successful Bidder, the Debtors solicited offers to acquire the Acquired Assets from a variety of parties, and Debtors' counsel engaged in discussions with a number of potentially interested parties. Several potential bidders after that date were given access to confidential due diligence to provide them an opportunity to submit a Qualified Bid. The last date to submit a Qualified Bid other than HC Salon was May 7, 2020. No other party submitted a bid.

10. On May 27, 2020, the Debtors and HC Salon entered into the Amended and Restated APA ("Final APA"). A copy of the Final APA was filed with this Court on May 27, 2020 [Dkt. No 426]. Among other things, the Final APA increases the purchase price by an additional $500,000 to be earmarked to fund certain potential "stub rent" administrative claims for CHI leases, plus $100,000 to fund the Debtors' wind down. Furthermore, HC Salon upon closing will waive any unsecured claims against the Debtors.

11. After spending over one year attempting, without success, to find an investor, buyer or an alternative financing source for the Debtors, I believe that the purchase price set forth in the Final APA represents a fair and reasonable offer to purchase the Acquired Assets under the

circumstances of these Chapter 11 Cases. Indeed, no other person or entity has offered to purchase the Acquired Assets for greater economic value or otherwise better terms to the Debtors' estates than the Buyers.

12. Since the Petition Date, the Debtors together with A&G Realty Partners have engaged all of landlords for the Debtors salons. These negotiations have resulted in deals with a substantial number of landlords which will result in the normalization of the Debtors lease obligations going forward.

13. As noted in my Declaration In Support Of Debtors' First Day Motion, the sudden progression of the COVID-19 crisis forced the sudden shut down of the Debtors' salons and left the Debtors without cash to operate, or the ability to reopen their salons when the Debtors operations are able to resume. That situation remains the same and if the sale to HC Salon is not approved, I believe the Debtors' only option would be to convert to a Chapter 7 liquidation. If that were to occur thousands of former employees will be without work. Therefore, it is my judgment that the sale to HC Salon is the only viable alternative for the Debtors and its proposed purchase price is the highest and otherwise best offer for the Debtors' assets.

14. At all times the negotiations between the Debtors and HC Salon were at arms-length and without collusion. Based on my understanding of the Bankruptcy Code, I believe HC Salon is not an insider of the Debtors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true correct.

Dated: May 28, 2020

By: /s/ *Phil Horvath*
Name: Phil Horvath
Title: President & COO

4