IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(GREENBELT DIVISION)

| | | |
|---|---|---|
| In re: | * | Chapter 11 |
| **CREATIVE HAIRDRESSERS, INC.,** *et al.*[1], | * | Case No. 20-14583, 20-14584-TJC |
| | * | (Jointly Administered) |
| Debtors. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DECLARATION OF AZHAR QUADER IN SUPPORT
OF SALE OF ASSETS TO HC SALON HOLDINGS, INC**

I, Azhar Quader, hereby declare as follows:

1. I am a manager at Tacit Salon Management LLC ("TS Management"),[2] and a manager and chairman of Tacit Salon Holdings LLC ("Sponsor"). Sponsor is the sole member of Tacit Salon Intermediate Holdings LLC ("Tacit Salon"). I make this Declaration based on personal knowledge and review of the relevant pleadings, except for statements made herein on information and belief. I am competent to testify to the facts set forth herein.

2. I am a member of the team of employees at TS Management and Sponsor responsible for the actions of HC Salon Holdings, Inc. ("HC Salon"), a Delaware corporation wholly owned by Tacit Salon, with respect to that certain Asset Purchase Agreement, dated as of April 13, 2020, by and between Creative Hairdressers, Inc. and Ratner Companies, L.C., as Sellers,

---

[1] The Debtors in these chapter 11 cases are: (i) Creative Hairdressers, Inc. and (ii) Ratner Companies, L.C.

[2] Any capitalized terms used but not defined herein shall have the meaning ascribed to them in the Purchase Agreement.

and HC Salon (as may be amended, the "Purchase Agreement"). I am familiar with the actions of HC Salon with respect to the Purchase Agreement.

## Asset Purchase Agreement

3. I am informed that on April 23, 2020, the Debtors submitted their *Motion of Debtors For Entry of Orders (I)(A) Establishing Bidding Procedures; (B) Approving Expense Reimbursement; (C) Establishing Procedures Relating to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (D) Approving Form and Manner of Notice; (E) Scheduling a Hearing to Consider Any Proposed Sale; (F) Granting Certain Related Relief; and (II)(A) Approving a Sale; (B) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection With the Sale; and (C) Granting Related Relief* [D.I. 22] (the "Sale Motion").

4. I am informed that on May 4, 2020, the this Court entered the *Order (I) Scheduling a Hearing to Consider Approval of the Sale of Substantially All of the Debtors' Assets, and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, and (III) Granting Related Relief* [D.I. 137] (the "Bid Procedures Order"). In connection with the Bid Procedures Order, the Bankruptcy Court approved the stalking horse bid submitted by HC Salon for the acquisition of substantially all assets of the Debtors and assumption of certain of the Debtors' liabilities (the "Acquisition") pursuant to the terms and conditions of the Purchase Agreement.

5. I am informed that as of the Bid Deadline, no Qualified Bid (as defined in the Bid Procedures Order) was received by the Debtors other than the bid submitted by HC Salon as set forth in the Purchase Agreement.

6. I am informed that on May 21, 2020, the Debtors filed the *Notice of Successful Bidder* [D.I. 403] (the "Auction Results Notice").

7. I am informed that this Court will consider the Debtors' proposed sale of assets pursuant to the Purchase Agreement (the "Sale") at a hearing scheduled for May 28, 2020 at 12:00 p.m. (ET).

### Good Faith

8. HC Salon is independent from the Debtors and is not a director, officer, general partner or otherwise "in control of" the Debtors. HC Salon did not induce or force the filing of these chapter 11 cases by the Debtors, and all payments made to the Debtors by HC Salon or other agreements or arrangements entered into by HC Salon and the Debtors in connection with the Acquisition and the transactions contemplated by Purchase Agreement have been disclosed.

9. At all times during the Sale process, HC Salon's actions, communications and negotiations with the Debtors were in good faith. HC Salon never engaged in any collusion with respect to the Purchase Agreement or in the submission of its bid. HC Salon's negotiations with the Debtors and their representatives and advisors were at arms' length at all times, and in connection with HC Salon's bid to acquire substantially all assets of the Debtors, HC Salon agreed to subject their bid to the competitive process set forth in the Bid Procedures Order.

10. Additionally, at all times, HC Salon recognized that the Debtors were free to deal with any other party interested in acquiring any or all of the Debtors' assets. HC Salon has complied, in all respects, with the provisions of the Bid Procedures Order.

11. Further, at all times since the commencement of these bankruptcy cases, HC Salon has acted in good faith toward the Debtors and their creditors, by, among others things, agreeing to fund over $6 million in debtor-in-possession financing, negotiating in good faith with

the Debtors' creditors and agreeing to a global settlement with the Official Committee of Unsecured Creditors and the Debtors' landlords.

**Adequate Assurance**

12. On May 20, 2020, HC Salon provided certain of the Debtors' landlords and creditors with information supporting HC Salon's ability to satisfy the requirement for adequate assurance of future performance under section 365 of the Bankruptcy Code for executory contracts and unexpired leases to be assumed by the Debtors and assigned to HC Salon under the Purchase Agreement.

13. HC Salon is able to satisfy the requirement for adequate assurance of future performance under section 365 of the Bankruptcy Code for executory contracts and unexpired leases to be assumed by the Debtors and assigned to HC Salon under the Purchase Agreement.

14. In order to consummate the Sale, Tacit Salon and Sponsor have made a cash equity investment to HC Salon of $15,000,000 and Sponsor maintains equity capital in the aggregate amount of at least $30,000,000 in immediately available funds (such maintained equity, the "Equity Investment").

15. Tacit Salon commits to use, and shall cause HC Salon to use the Equity Investment to fulfill its obligations under the Purchase Agreement to make the cash payments required to be made by HC Salon and its designees at closing, along with additional reserve for working capital needs of the business following the closing, including making, when due, all payment obligations under Designated Contracts and Assumed Leases.

16. HC Salon shall make any required cure payments pursuant to the Purchase Agreement with respect to all executory contracts and unexpired leases that are assumed by the Debtors and assigned to HC Salon consistent with the Purchase Agreement, Bidding Procedures

Order, subsequent sale order and other agreements that have been made with contract-counterparties. Further, as evidenced by the Equity Investment, HC Salon shall maintain sufficient capital to satisfy all payment obligations under Designated Contracts and Assumed Leases and will not require the incurrence of long term debt as a consequence to closing. HC Salon does not expect to incur any long-term debt with respect to its operations, and it is moving forward without any debt on its balance sheet.

17. The financial health of HC Salon upon the consummation of the sale of the Debtors' assets is in sharp contrast to the financial condition of the Debtors in the months leading up to the commencement of these bankruptcy cases. With a reorganized operational structure and a "clean" balance sheet, HC Salon strongly believes in the future viability of the Hair Cuttery franchise, and its ability to meet all financial obligations.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  May 28, 2020

*/s/ Azhar Quader*
Azhar Quader