Entered: January 27th, 2022
Signed: January 26th, 2022
**SO ORDERED**



THOMAS J. CATLIOTA
U.S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
## at Greenbelt

| | | |
|---|---|---|
| In re: | * | Case No. 20-14583-TJC |
| Creative Hairdressers, Inc., *et al.* | * | Chapter 11 |
| Debtors | * | Jointly Administered with |
| | * | Case No. 20-14584-TJC |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER DENYING CLAIM FOR LIQUIDATED DAMAGES UNDER THE FAIR LABOR STANDARDS ACT

Nicole Olsen ("Claimant") filed a claim for liquidated damages under the Fair Labor Standards Act, as amended[1] (the "FLSA") for non-payment of wages to the employees of debtors Creative Hairdressers Inc. and Ratner Companies, L.C. (the "Debtors"). She filed the claim as class representative on behalf of all employees. The Debtors object to the claim on several grounds. As pertinent here, the Debtors ask the Court to exercise its discretion under §260 of the FLSA and deny liquidated damages. They contend the government-mandated shutdown of their business in response to the COVID-19 pandemic left them unable to pay employees for the one-week pay period in which operations ceased, and they went to great lengths to pay employees in

---

[1] 29 U.S.C. §201 *et seq.*, as currently in effect, including amendments introduced by the Portal-to-Portal Act of 1947, 80 Pub. L. 49. Unless otherwise stated, all citations herein are to Title 29 of the United States Code.

1

full as soon as they were able in less than thirty days. They argue that the delay in paying employees does not warrant the award of liquidated damages under the extraordinary circumstances of this case, noting that employees were paid the full amount of their claims while general unsecured creditors will receive little or no distribution. For the reasons explained below, the Court concludes that the claim for liquidated damages should be disallowed under the unique circumstances presented by the COVID-19 pandemic.

## Procedural History

Claimant timely filed Claim No. 460-1 against the Debtors in Case No. 20-14583 and Claim No. 21-1 against only Ratner Companies, L.C. in Case No. 20-14584. The proofs of claim are otherwise identical. They assert claims in the amount of $4,000,000 for "[l]iquidated damages under the FLSA for non-payment of wages to substantially all workers nationally." *See* Claim No. 460-1 in Case No. 20-14583 at p. 2. Claimant asserted priority status for the claims under §507(a)(4)(A) of the Bankruptcy Code as wages, salaries or commissions earned within 180 days of the petition date. *Id*. at p. 3.

The Debtors objected to the claims and Claimant filed an opposition to the objection. ECF 858, 907. The Debtors' objection raised several grounds for disallowing the claims in their entirety and denying them priority status. The Court held a hearing on the objections on December 8, 2021. On December 13, 2021, the Court issued a Memorandum of Decision ("Memorandum") determining that liquidated damages under the FLSA are compensation for potential harm caused by delaying the payment of wages and are not "wages . . . earned" by employees as required by 11 U.S.C. §507(a)(4)(A). ECF 1019. Therefore, the Court sustained the objection to the priority asserted in the claims. As the Court noted, the claims likely will

have meaningful value only if entitled to priority because of the estates' limited resources, and therefore resolved that issue initially. Memorandum at n. 2.

Claimant filed a notice of appeal of the Memorandum. At a status conference held on January 6, 2022, the parties requested the Court to resolve the remaining issues so as to prevent piecemeal litigation and consented to the Court doing so notwithstanding the appeal of the priority ruling in the Memorandum. This memorandum follows.

## Jurisdiction

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §1334, 28 U.S.C. §157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This matter is a "core proceeding" under 28 U.S.C. §157(b)(2) and the Court has statutory and constitutional authority to enter a final order.

As stated above, Claimant filed a notice of appeal of the Memorandum denying the claim priority status under 11 U.S.C. §507(a)(4)(A). "As a general rule, the filing of an appeal 'confers jurisdiction on the [appellate court] and divests the [lower] court of its control over those aspects of the case involved in the appeal.'" *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 263 (4th Cir. 2011) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). "The divestiture rule applies to appeals of bankruptcy proceedings." *In re Winimo Realty Corp.*, 270 B.R. 99, 105 (S.D.N.Y. 2001). The rule avoids "confusion and waste of time that might flow from putting the same issue before two courts at the same time." *In re Kendrick Equip. Corp.*, 60 B.R. 356, 358 (Bankr. W.D. Va. 1986).

Here, the interlocutory appeal of the Memorandum addresses a single, discreet issue: Would an allowed claim for liquidated damages under the FLSA be entitled to priority under 11 U.S.C. §507(a)(4)(A). The issue now before the Court is whether the claim should be allowed at

all. Although the two issues are clearly related, the issue before the Court is not an aspect of the case involved in the appeal as that phrase is used in the divestiture rule. The appeal will determine the priority of a claim, if any, while the matter before the Court is whether there even is a claim. Further, the policy considerations behind the rule are furthered by resolving the current dispute and would not be advanced by deferring ruling until the appeal is resolved. Deferring ruling could result in waste of judicial resources and unnecessary delay. Finally, and significantly, the parties agreed at the status conference on January 6 that the Court should resolve the current dispute so that the appellate court has all matters before it.

## Findings of Fact

The Court made findings of fact in the Memorandum, which are applicable here and repeated below:

> Prior to the petition date, debtor Creative Hairdressers, Inc. ("CHI") was one of the nation's largest independent family-owned chain of hair salons, operating approximately 800 hair salons under the Hair Cuttery, Bubbles, and Cielo brands. ECF 6 ¶4. CHI employed over 10,000 full and part time employees. *Id.* It operated salons in 16 states including the District of Columbia. *Id.*
> In recent years before the bankruptcy filing, CHI found itself facing increased competition that led to eroding profitability. ECF 6 ¶7. CHI sought to address these challenges through a number of initiatives and the retention of an advisor and an investment banker. *Id*. ¶¶7, 10. The investment banker widely marketed CHI over a one-year period to a broad range on potential buyers and investors. *Id*. at ¶10. CHI also developed a business plan that included closing under-performing locations, reducing overhead, and addressing employee count. *Id.* The owners invested $7 million on a subordinated basis to provide working capital, and one owner provided credit support in the form of a $1 million limited guaranty on borrowings. *Id.* at ¶10. The results were promising. By late 2019 and early 2020, CHI was outperforming its business plans and projecting enhanced earnings for fiscal year 2020. *Id*. at ¶8.
> All progress came to a complete standstill with the onset of the COVID-19 coronavirus pandemic. In March 2020, CHI was forced to close all of its salons and furlough most of its employees as states and local governments issued orders to address the spread of the virus. *See e.g.,* 47-7 Md. Reg. 375 (March 27, 2020) (reprinting Governor Hogan's March 23, 2020 executive order closing all beauty salons in Maryland); *see also, e.g.,* 52 N.J. Reg. 554(a) (April 6, 2020) (reprinting Governor Murphy's executive order closing all non-essential businesses in New

Jersey). In New Jersey, where Claimant worked, CHI was required to close all of its locations by March 21, 2020, and by that date, CHI closed all other operations. *See* New Jersey Register, *supra*; ECF 14.

As a result of the sudden closure of CHI's salons, CHI was almost immediately depleted of virtually all liquidity. ECF 858 ¶4. CHI generated revenues from payment at point of sale, and it had virtually no receivables to provide ongoing liquidity. *See* Amended Schedule A/B at pp. 9-11, ECF 284 (showing no cash or receivables of value as of the petition date).

CHI had sufficient funds to meet its payroll obligations for the two-week period ending March 14, 2020. ECF 6 ¶11; ECF 23 ¶12. It lacked funds to pay employees for hours they worked for March 15 to March 21, 2020, the closure date. In usual times, the pay earned during this period would be included in the two-week payroll earned through March 28, 2020 and paid on April 7, 2020. CHI could not pay the March 15 to March 21, 2020 wages on April 7, 2020.

The Debtors continued the search for investors or a purchaser, seeking to maintain the business as an operating company that could survive the pandemic and allow its employees to resume their careers. It entered into a sale transaction with HC Salons. A key element of the transaction was the buyer would provide debtor-in-possession financing to enable the Debtors to pay the missed April 7 payroll. ECF 6 ¶18.

CHI filed for chapter 11 protection on April 23, 2020. It filed with its petition several motions, including a motion for authority to borrow under the DIP financing arrangement and to pay pre-petition wages. ECF 14. In the declaration filed in support of the motion to pay wages, CHI's Chief Operating Officer emphasizes its concern that it be allowed to quickly pay its employees. ECF 6 ¶35. After an emergency hearing held on April 27, 2020, the Court granted the motion to pay pre-petition wages. ECF 71. Employees were paid soon after that hearing.

The sale transaction closed and the buyer is operating the business with many of the Debtors' former employees retained. The Debtors appear able to pay all administrative claims of the estate. The Debtors anticipate that little, if any, amounts will be available for general unsecured creditors.

Claimant initiated a class action complaint on behalf of all employees in the United States District Court for New Jersey on April 7, 2020, which was stayed by the filing of the bankruptcy case. *Id.* The complaint seeks pay for the hours worked between March 15 and March 21, 2020, liquidated damages, and other relief. *See* complaint attached to Claim No. 460-1.

Claimant then timely filed Claim No. 460-1 against CHI and Ratner Companies, L.C. in Case No. 20-14583 and Claim No. 21-1 against only Ratner Companies, L.C. in Case No. 20-14584. The proofs of claim are otherwise identical. Because the claim for wages was satisfied when CHI paid them after the petition, Claimant seeks only liquidated damages under the Fair Labor Standards Act for the failure to pay the payroll on time. The claims assert §507(a)(4) priority status in the prophylactic amount of $4 million on behalf of all Debtors' employees. CHI's motion for a prepetition wages order sought approval for $3.1 million in pre-petition employee payments. ECF 14.

5

Memorandum at pp. 2-5 (footnote omitted). Additional facts will be stated as necessary below.

## Conclusions of Law

A creditor in a Chapter 11 bankruptcy proceeding may file a proof of claim. 11 U.S.C. §501(a). A proof of claim is the creditor's statement as to the amount and character of the claim. Fed. R. Bankr. P. 3001(a). The holder of an "allowed claim" may receive distributions from the bankruptcy estate in a Chapter 11 proceeding. *In re Harford Sands Inc.*, 372 F.3d 637, 640–41 (4th Cir. 2004).

> The Bankruptcy Code establishes a burden-shifting framework for proving the amount and validity of a claim. The creditor's filing of a proof of claim constitutes prima facie evidence of the amount and validity of the claim. 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). The burden then shifts to the debtor to object to the claim. 11 U.S.C. § 502(b); *Finnman*, 960 F.2d at 404. The debtor must introduce evidence to rebut the claim's presumptive validity. Fed. R. Bankr. P. 9017; Fed. R. Evid. 301; 4 Collier at ¶ 501.02[3][d]. If the debtor carries its burden, the creditor has the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence.2 Id. at ¶ 502.02[3][f].

*Id.*

Here, the claim is for liquidated damages under the FLSA. Section 216 provides that an "employer who violates the provisions of [§§ 206 or 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." §216(b). The seemingly mandatory liquidated damages of §216 are subject to judicial discretion. In an action to recover unpaid wages, a "court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified" in §216 if the "employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [the employer] had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] . . . ." 29 U.S.C. §260.

6

Before an employee can recover liquidated damages, the employer must violate either §§206 or 207. Subject to limitations not relevant in this case, §§206 and 207 require that employers pay minimum wages and overtime wages for hours worked above 40 hours in a week. §§206 and 207. Although the plain language of these sections does not contain language setting the time for an employer to pay wages, courts have consistently held that wages are due on the next regular pay date. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945); *see also Roland Electrical Co. v. Black*, 163 F.2d 417, 418 (4th Cir. 1947) ("if [an employer] fails to pay overtime compensation promptly and when due on any regular payment date, the statutory action [] immediately arises in favor of the aggrieved employee"). Here, the Debtors were scheduled to pay Claimant for hours worked from March 15 to March 21, 2020 on April 7, 2020. This payment was not made until around April 27, 2020. Therefore, the Court concludes that the prerequisite FLSA violation occurred.

The Court turns to whether the Debtors have met their burden under §260. The Fourth Circuit has reframed §260 as placing a "plain and substantial burden" that the "failure to obey the statute was both in good-faith and predicated upon such reasonable grounds that it would be unfair to impose more than a compensatory verdict." *Richard v. Marriott Corp.*, 549 F.2d 303, 306 (4th Cir. 1977), *cert denied*, 433 U.S. 915; *Burnley v. Short*, 730 F.2d 136, 140 (4th Cir. 1984); *Brinkley-Obu v. Hughes Training*, 36 F.3d 336, 357 (4th Cir. 1994); *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997). The Fourth Circuit applies an objective standard to the good faith analysis prong. *Mayhew*, 125 F.3d at 220; *Clifton D. Mayhew, Inc. v. Wirtz*, 413 F.2d 658, 661-62 (4th Cir. 1969). In considering the second prong—whether a debtor's failure to obey the FLSA was predicated upon such reasonable grounds that it would be unfair to impose a more than compensatory verdict—the Fourth Circuit applies a totality of the circumstances test. *See*

7

*Mayhew*, 125 F.3d at 221; *see also Brinkley-Obu*, 36 F.3d at 357. The Fourth Circuit has not always discussed the two *Richard* prongs separately or required that lower courts address both prongs in denying liquidated damages. *See Burnley*, 730 F.2d 136 (affirming the judgment of the district court where neither trial nor appellate courts considered both prongs); *see also Brinkley-Obu*, 36 F.3d at 357-58 (finding no abuse of discretion where the court below was convinced only of one prong). Where courts have considered both prongs independently, the analysis of the second prong is based on facts relevant to the first prong. *See, e.g.*, *Mayhew*, 125 F.3d 216.

This case is unique. In most FLSA cases, the employer pays or does not pay employees, as the case may be, based on its determination on what is proper or justified. *See, e.g.*, *Richard*, 549 F.2d at 305 (affirming the trial court's holding that liquidated damages were appropriate for the period between when the employer learned that its pay practice conflicted with administrative interpretations and when it voluntarily ceased its non-compliant pay practices); *see also, e.g.*, *Burnley*, 730 F.2d at 138-39 (considering a case where an employer determined that employees were not covered by the FLSA based on a good-faith interpretation of the statute). Other cases that might be considered typical include a challenge to payment practice with long histories. *See, e.g.*, *Brinkley-Obu*, 36 F.3d 336 (involving sex-discrimination practices over a period of years); *see also, e.g.*, *Mayhew*, 125 F.3d 216 (involving a challenge to wage calculations for services the employee continuously rendered over eight years). But the facts here are so unique that comparison to precedent is challenging.

The Court begins by considering the extraordinary circumstances of this case. As noted above, in most FLSA cases the employer pays or does not pay employees, as the case may be, based on its determination on what is proper or justified. The task of the Court is to decide if that determination was made in good faith and on a reasonable basis. Here, however, CHI's

delay in paying the March 15 – March 21 payroll was not its choice. The unanticipated government shutdown of the business left it unable to pay the employees. As set forth in the Findings of Fact, states across the country ordered the closure of retail locations, including hair salons, in March 2020 in response to the pandemic. Upon the closure of CHI's approximately 800 salons, it had sufficient funds to meet its payroll obligations for the two-week period ending March 14, 2020 but lacked the resources to pay employees for the period March 15-21, due on April 7, 2020.

The Court first concludes that CHI's lack of financial resources to pay the April 7 payroll was not the result of improvident or imprudent practices. To the contrary, prior to the bankruptcy filing, CHI faced business challenges and eroding profitability, but it addressed those in several ways. The Debtors retained an advisor and investment banker. CHI developed a business plan that would enhance its competitive position by closing under-performing locations, reducing overhead, and taking other actions. Prepetition, its owners invested an additional $7 million in capital. By the time of the pandemic, it was outperforming its business plan. And the effects of the pandemic were not known or foreseeable. Thus, CHI's inability to pay the April 7 payroll was not its doing.

The Court turns to what actions CHI took to address the inability to pay the April 7 payroll. The Debtors undertook an aggressive and active effort to reactivate the process of finding a buyer for the business or an investor to provide necessary capital. ECF 6 at ¶¶12, 13. They were motivated not only to ensure employees would be paid but to maintain the business operations so that salon employees could resume their careers when operations resumed. *Id.* at ¶12.

Notwithstanding the highly uncertain business and economic climate resulting from the pandemic, the Debtors succeeded in finding a buyer for the business. The Debtors required that the buyer provide debtor-in-possession financing to immediately pay the employees pending the sale. The Debtors filed an emergency motion with their petition to pay employees. ECF 14. The motion highlights the importance and urgency of paying the employees. *Id*. at ¶¶7-13. CHI paid the employees as soon as the Court granted the approval—within several days of the petition. To ensure the transaction could succeed, the Debtors' owners made an additional $4 million capital addition by making good on a pledge of a prepetition loan. ECF 6 at ¶13.

Under any standard, the facts summarized above establish the Debtors' good faith in responding to the unprecedented challenge brought on by the pandemic. The record is clear that the Debtors' staunch focus was to be sure employees were paid quickly, not only because it was consistent with CHI's culture to do so, but also because it was necessary to preserve the enterprise value of the business. *Id.* at ¶18. The owners provided $11 million of value in capital to benefit the Debtors, including $4 million post-petition to help ensure the sale transaction could close, evidencing their good-faith commitment to satisfying the employees' claims.

The forgoing facts also support the conclusion that Debtors' failure to obey the FLSA was predicated upon such reasonable grounds that it would be unfair to impose more than a compensatory verdict. Employees were not timely paid for one week of wages, but they were paid the entire amount due less than thirty days after the original payroll date. They were paid in full as a result of the Debtors' proactive and aggressive efforts described above. Although the delay may well have disrupted the employees' financial resources, it also must be said that they fared far better in the payment of their claims than the other creditors in this case.

The Court is not aware of any cases from this Circuit that address facts like the case at bar. The closest case that this Court is aware of is *Martin v. United States*, 130 Fed. Cl. 578, 580 (2017). There, federal employees were required to work despite a government shutdown that necessitated the federal government to delay the payment of wages. *Id.* at 586-87. Citing the Ninth Circuit, the court rejected the federal government's argument that, because a separate federal statute prohibited payment of wages without an appropriations bill in effect, it had established a good faith belief that it was complying with the FLSA. *Id.* (citing *Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993) (awarding liquidated damages to state employees when California delayed paying wages because of a state budget impasse). The court noted that, instead of investigating what, if any, actions could be taken prior to or after the congressional budget impasse, the government merely raised the conflicting statute as a *post hoc* justification for not complying with the FLSA. *Id.* at 585-86.

The *Martin* court did not consider liquidated damages under the standards of *Richard* or its progeny in the Fourth Circuit. Nevertheless, comparing the facts of this case to *Martin* supports the Court's conclusion that liquidated damages are not warranted here. The reason for the delayed payment in *Martin* was of the government's own creation, the very party seeking to be excused from paying liquidated damages. Here, the Debtors had no control over the states' orders requiring the closure of CHI's salons. Moreover, it would be incorrect to call the shutdown in *Martin* a surprise. Congress yearly passes budgets, and the deadline to spend such appropriations is known when they are signed into law. Here, the pandemic was in its infancy in March 2020 and the closures came on quickly and with little notice. Finally, the Debtors were extremely responsive to the conditions thrust upon them whereas the government took no steps to provide payment to workers during the shutdown.

The Court recognizes that the FLSA provides important protections to employees. As many of the cases cited herein have noted, the protections provided by the FLSA exists because the employer-employee relationship is one of inherently unequal power, but this case does not raise such concerns. Both CHI and its employees, like most of the world, were caught off guard by an unprecedented global pandemic. This case is an example of an employer responding to unpredictable events and reacting as best it could to fulfill its obligations. As a result, Claimant received payment in full of the delayed wage payment within thirty days. Claimant has already received far more on her claim than other general unsecured creditors will receive.[2]

For the foregoing reasons, the Court will deny the claim for liquidates damages under the FLSA.

Accordingly, it is, by the United States Bankruptcy Court for the District of Maryland, hereby

ORDERED, that Claim No. 460-1 against CHI and Ratner Companies, L.C. in Case No. 20-14583 and Claim No. 21-1 against only Ratner Companies, L.C. in Case No. 20-14584 are denied.

cc:   Debtors
      Counsel for Debtors
      Claimant
      Counsel for Claimant
      United States Trustee
      All creditors and parties in interest

**END OF MEMORANDUM AND ORDER**

---

[2] Throughout these proceedings, Ratner Companies, L.C. has maintained that it is not obligated on the claim because it merely provided administrative services for CHI. Because the Court will deny the claim against both parties, the Court does not address this issue. Further, because the Court will deny the claims, the questions raised by the parties related to class certification are moot.